Stanley K. MANN, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 98–312C.

United States Court of Federal Claims.

Sept. 3, 2002.

Steven J. Lechner, Denver, CO, for plaintiff.

Jonathan S. Lawlor, Washington, DC, for defendant.

## OPINION

WILSON, Judge.

This matter is before the court on defendant's motion to dismiss pursuant to RCFC 12(b)(1) and (6), or in the alternative, for summary judgment pursuant to RCFC 56(b), as well as plaintiff's cross-motion for summary judgment. Plaintiff alleges that the United States, acting through the Bureau of Land Management (BLM) and Minerals Management Service (MMS) breached his geothermal lease and violated his Fifth Amendment due process rights, by terminating the lease and causing it to expire without proper notice.[1] For the reasons discussed below, defendant's motion to dismiss, or in the alternative for summary judgment, is GRANTED. Plaintiff's cross-motion for summary judgment is DENIED.

## BACKGROUND

The Geothermal Steam Act of 1970, 30 U.S.C. §§ 1001–1025 (amended 1988), authorizes the Secretary of the Interior to issue leases for the development and utilization of geothermal steam and associated geothermal resources on federal land. 30 U.S.C. § 1002. The Act provides that "[i]f geothermal steam is produced or utilized in commercial quantities within [the] term" of the lease, "such lease shall continue for so long thereafter as geothermal steam is produced or utilized in commercial quantities, but such continuation shall not exceed an additional forty years." 30 U.S.C. § 1005(a). The Act defines "[p]roduced or utilized in commercial quantities" as "the completion of a well capable of producing geothermal steam in commercial quantities so long as the Secretary determines that diligent efforts age being made toward the utilization of the geothermal steam." 30 U.S.C. § 1005(d).

Unless otherwise noted, the following facts are contained in the parties' joint stipulation of facts. This action involves leased property on federal land located in Dona Ana County, New Mexico. On October 20, 1981, BLM issued a ten-year geothermal lease (NM 40957) to Southland Royalty Company, which immediately assigned it to Chaffee Geothermal Ltd. ("Chaffee"). Following the government's approval of the assignment, Chaffee drilled two geothermal wells on the property, both of which were productive. Chaffee then reassigned the lease to Stanley K. Mann,

---

1. During oral argument, plaintiff's counsel advised the Court that Mr. Mann had dropped an additional claim alleging that the termination of his lease was a taking without just compensation, in violation of the Fifth Amendment Takings Clause. Transcript (Tr.) of Oral Argument held June 13, 2001 at 50, ¶¶ 9–12. Based on plaintiff's representation to the Court, this decision is limited to plaintiff's two remaining claims.

president of Crowne Geothermal Ltd. ("Crowne"). BLM approved the reassignment on April 1, 1986.

On February 15, 1988, Crowne applied to BLM for an individual well production utilization permit to construct a greenhouse operation. On August 7, 1989, Stanley K. Mann, as president of Crowne, wrote a letter to BLM that included information regarding his lease and the drill logs and history of the wells. This letter also explained that "we have so much of our lives and money invested in these wells" that "we wish to apply for a conversion to a long term lease under the Regulations." (Record (R.) at 612.) On April 17, 1990, plaintiff was notified by an MMS representative that MMS had not received the Payor Information Form required for his lease, which led to a telephone discussion between plaintiff and the representative regarding this issue. According to plaintiff, during this discussion the parties also spoke about converting the lease to a forty-year term. The parties do not dispute, however, that plaintiff's lease was not extended.

Subsequently, BLM advised plaintiff that his insurance agent had failed to notify the government of a change in surety for the bond for his lease. On April 1, 1991, Mr. Mann responded by sending a letter to his insurance company, directing them to send a surety change notice to BLM. Plaintiff wrote that "[w]e have advised Ms Morales [a BLM representative] of the situation, and will send her a copy of this letter"; Mr. Mann then sent an unsigned, courtesy copy to BLM. In the letter, plaintiff notified the insurance company that a bill had been previously sent to "our old Denver address, and it took some time to reach us." He asked the recipients to "please note our new address in California at the bottom of this letter," which was 3159 Canadian Drive, Costa Mesa, California 92626 (the "Costa Mesa address"). Plaintiff also advised that "the wells are shut-in and will remain so for the foreseeable future." (R. at 626.)

In 1993, BLM concluded that plaintiff was not making "diligent efforts" toward utilization of his wells' geothermal resources. On November 12, 1993, the agency rendered a "Lease Determination" informing plaintiff that: 1) no extension of lease "NMNM 40597" (sic) [2] had been requested; 2) the well was not in commercial production; and 3) because the well was not in commercial production, the lease "NMNM 34793" (sic) [3] would expire 30 days after receipt of the decision unless plaintiff provided "satisfactory evidence" of diligent efforts to utilize the lease. The Lease Determination also advised plaintiff that an appeal of the decision could be filed with the Interior Board of Land Appeals (IBLA) within thirty days of the determination's receipt. The Lease Determination was sent via certified mail to the Costa Mesa address contained in the April 1 letter, but was returned to BLM marked "unclaimed" on December 8, 1993. (R. at 647–649.)

Plaintiff first learned of the Lease Determination on August 16, 1995, during a visit to the BLM to discuss the status of Crowne's development and utilization proposal. At the meeting, a BLM representative suggested that it might be possible for Mr. Mann to extend his lease. However, BLM later determined that this advice was erroneous. BLM concluded that plaintiff's lease had expired by operation of law, since the Lease Determination had been properly issued and was constructively received by the plaintiff.

Plaintiff's appeal of the lease's expiration to the IBLA was denied, as was his subsequent motion for reconsideration. *Stanley K. Mann*, IBLA No. 95–705 (November 3, 1995) (Mann I); *Stanley K. Mann*, IBLA No. 95–705 (March 15, 1996) (Mann II). Plaintiff then sought review of the IBLA decision under the Administrative Procedure Act, 5 § U.S.C. § 702, 706(2)(A) in federal district court, but voluntarily dismissed this action in order to pursue his case in the Court of Federal Claims.

---

**2.** The lease determination transposed two digits in the lease number and added an extra "NM". Instead of NMNM 40597, the Lease Determination should have referred to NM 40957.

**3.** "NMNM 34793" was not the correct number of plaintiff's lease.

Plaintiff alleges that the agency's cancellation of his lease breached the terms of the lease and violated his Fifth Amendment due process rights. Plaintiff seeks to recover the value of the lost lease, lost profits, development costs, rental payments made subsequent to the lease's expiration[4], attorney fees, court costs, and pre-judgment interest. Defendant moves to dismiss the breach of contract claim, or in the alternative, moves for summary judgment, on the ground that BLM's notice of the lease's expiration complied with the regulations incorporated into the lease. Defendant also moves to dismiss the due process claims for lack of subject matter jurisdiction.

## ANALYSIS

*Breach of Contract Claim*

■ The Court treats defendant's motion to dismiss for failure to state a claim as a motion for summary judgment pursuant to RCFC 12(b), which provides that "if matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." *See Rotec Indus., Inc. v. Mitsubishi Corp.,* 215 F.3d 1246, 1250 (Fed.Cir.2000). Summary judgment is appropriate when there "is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." RCFC 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Plaintiff's primary contention is that BLM breached the lease when it issued the Lease Determination by failing to conform to the regulations regarding proper notice incorporated into the lease. The government argues that it did not breach the lease because plaintiff received constructive notice of the lease's pending expiration and plaintiff failed to exercise due diligence to commercially utilize the lease. Therefore, defendant argues, plaintiff's lease expired by operation of law on February 6, 1994, pursuant to 43 C.F.R. § 3244.4(b) (1993).[5]

The lease at issue incorporates "all terms, conditions, and requirements of ... all regulations promulgated by the Secretary of the Interior ('Secretary') ... including, but not limited to, 43 C.F.R. Parts 3000 and 3200 ...". Plaintiff is charged with knowledge of these regulations. *See Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 384–385, 68 S.Ct. 1, 92 L.Ed. 10 (1947). Pursuant to 43 C.F.R. § 3244.4(b),

> Any lease that has continued beyond the end of its primary or extended term based on the existence of a well capable of producing geothermal resources in commercial quantities, *shall expire 30 days after receipt of a decision* from the authorized officer determining that diligent efforts are not being made toward utilization of geothermal resources; *unless, during such 30–day period,* the lessee provides the authorized officer satisfactory evidence that diligent efforts are in fact being made. (emphasis added.)

The plain language of this regulation, together with Federal Circuit precedent, suggests that the 30–day period during which a lessee may demonstrate due diligence begins after actual receipt of a lease decision. *Saddler v. Dep't of the Army,* 68 F.3d 1357 (Fed.Cir.1995) (deadline for appeal of an Equal Employment Opportunity Compliance and Complaints Review Agency (EEOCCRA) decision was triggered by actual receipt rather than constructive receipt of the decision, notwithstanding the employee's failure to keep the agency informed of his current address); *Kumferman v. Dep't of the Navy,* 785 F.2d 286, 288–289 (Fed.Cir.1986) ("the gener-

---

4. Defendant has agreed that any royalty payments plaintiff paid after the lease expired February 6, 1994, are refundable to plaintiff. (Tr. at 7, ¶¶ 21–23.)

5. Defendant also argues that plaintiff challenges the reasonableness of the BLM decision regarding the termination of his lease, a claim over which the CFC lacks subject matter jurisdiction. Defendant mischaracterizes plaintiff's position in this regard. Plaintiff's complaint alleges breach of contract, not an APA challenge to agency action, and seeks damages, not reinstatement of the lease. The Court has jurisdiction over plaintiff's breach of contract claim under the Tucker Act, 28 U.S.C. § 1491(a)(1), which provides in pertinent part that "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon ... any express or implied contract with the United States, ... not sounding in tort."

al rule applicable to jurisdiction notice statutes that expressly require receipt of the notice by the person charged, is that proof of mailing, without more, does not satisfy the statute.")

However, the Geothermal Steam Act regulations incorporated into the lease at issue in this case explicitly provide for constructive receipt of BLM communications. Specifically 43 C.F.R. § 1810.2 (1993) provides:

(a) Where the regulations in this chapter provide for communication by mail by the authorized officer, the requirement for mailing is met when the communication, addressed to the addressee at his *last address of record* in the appropriate office of the Bureau of Land Management, is deposited in the mail.

(b) Where the authorized officer uses the mails to send a notice or other communication to any person entitled to such a communication under the regulations of this chapter, that person *will be deemed to have received the communication if it was delivered to his last address of record* in the appropriate office of the Bureau of Land Management, *regardless of whether it was in fact received by him.* An offer of delivery which cannot be consummated at such last address of record because the addressee had moved therefrom without leaving a forwarding address or because delivery was refused or because no such address exists will meet the requirements of this section where the attempt to deliver is substantiated by post office authorities. (emphasis added).

The constructive receipt regulation enscribes into law the Interior Department's longstanding "general rule that transmission of a decision to a party's last address of record by registered or certified mail, return receipt requested, constitutes constructive service, even though delivery was unsuccessful." *Fidelity Trust Building, Inc.,* 129 IBLA 57, 60 (1994). According to the IBLA, the purpose of section 1810.2 is "to protect the efficient operations of BLM in those circumstances where actual delivery of needed mail is prevented due to action or inaction on the part of the addressee." *L. Lee Horschman,* 74 IBLA 360, 362 (1983).

Defendant argues that the Court should give deference to agency interpretations of its regulations, including those which allow BLM to give constructive notice of lease decisions. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (courts should defer to reasonable agency interpretations of statutes administered by the agency). However, the Federal Circuit has held that *Chevron* deference is inappropriate in the context of a contract dispute in which the agency has a financial interest. *Southern California Edison Co. v. United States,* 226 F.3d 1349, 1357 (Fed.Cir. 2000) ("When a party enters into a contract with the government, that party should reasonably expect to be on equal legal footing with the government should a dispute over the contract arise."); *See also Brown v. United States,* 195 F.3d 1334, 1340 (Fed.Cir. 1999) ("The interpretation of regulations which are incorporated into government contracts is a question of law which the Court is free to resolve.") The Court therefore declines to defer to defendant's interpretation of the notice regulations incorporated into geothermal leases.

The plain language of the regulations governing receipt of an agency decision in this case differ from the jurisdictional notice requirements in *Saddler and* Kumferman. In *Saddler,* the regulation at issue required appeal of EEOCCRA decisions "within 20 days after the appellant *receives* the agency resolution or final decision on the discrimination issue." (emphasis added). 5 C.F.R. § 1201.154(b) (1994). Likewise, the issue of timeliness reviewed in *Kumferman* hinged on a statutory requirement that an appeal of a Merit Systems Protection Board decision "must be filed within 30 days after the date the petitioner *received* notice of the final order or decision of the Board." 5 U.S.C. § 7703(b)(1). In both cases, the Federal Circuit interpreted the term receives to mean actual receipt.

The geothermal lease expiration provision in this case, 43 C.F.R. § 3244.4(b), must be considered in conjunction with 43 C.F.R. § 1810.2. Section 1810.2 explicitly establishes that when notice sent by certified mail is

delivered to a person's last address of record, that person is *deemed to have receipt* of the notice, regardless of whether it was in fact received. Despite plaintiff's assertion to the contrary, the specific circumstances giving rise to constructive service enumerated in the second sentence of § 1810.2(b) do not appear to be exclusive. Rather, they serve as examples of action or inaction by the addressee which rendered communications undeliverable. Thus, as long as a lease decision is sent to the lessee's last address of record, it is considered received, albeit constructively, even if it is returned to the BLM as undeliverable.

■ Plaintiff further argues that constructive service of the Lease Determination was not established because it was not mailed to his "last address of record" pursuant to 43 C.F.R. § 1810.2. *See Terry L. Wilson,* 85 IBLA 206, 209 (1985) (constructive service is not established when the postal statement indicates that the decision was not actually delivered to a party's last address of record). Plaintiff asserts that his last address of record at BLM was the address stamped on his March 30, 1990 letter to the agency (Malibu Bay Club, 11932 White Water Lane #B, Malibu, CA 90265, hereafter the "Malibu address") instead of the Costa Mesa address where the Lease Determination was mailed.

The regulations do not establish a procedure by which a leaseholder must notify BLM of a change of address. *See L. Lee Horschman,* 74 IBLA 360, 363, n. 1 (1983) ("We also realize that all problems relating to forwarding of mail could be obviated by requiring a prospective lessee or entryman to file a change of address with BLM. However, until such time as the regulations are amended to accomplish such ends, we are required to administer them in conformity with their language"). Moreover, the term "last address of record" is not defined by regulation. The IBLA defines "last address of record" as the "place where the party to receive documents has declared he will receive such delivery." *Arthur M. Solender*

*and Lynn Devereau,* 79 IBLA 70, 73 (1984). Generally, unless the applicant has filed a "written notice of a change of address" with the BLM, the address stated on the lease application is considered the "last address of record" pursuant to 43 C.F.R. § 1810.2 (1993). *Victor M. Onet, Jr.,* 81 IBLA 144, 146 (1984). A departure from using the lease application address should only occur if the leaseholder has "expressly indicated an intention to change the address of record." *Arthur M. Solender and Lynn Devereau,* 79 IBLA at 73. The rationale for this general policy is that leaseholders may have more than one business office or residence, or may be corresponding from a temporary address. *Id.* Placing the onus on leaseholders to keep the government informed of changes in their address is the only practical method for ensuring that government correspondence is sent to the proper address.

In the second paragraph of the April 1, 1991 letter, plaintiff asked the recipients to "[p]lease note our new address in California at the bottom of this letter." (R. at 626.) The letter is fairly read as intending to change the place where Mr. Mann had declared that he would receive documents to the Costa Mesa address. The Court rejects plaintiff's argument that the letter requested a change in address only for Crowne and not for Mr. Mann. True, it notifies plaintiff's surety, Insurance Management Associates, Inc., of a change in Crowne's address. However, the principal of the surety bond is not Crowne but Mr. Mann. The letter was drafted by plaintiff and was furnished by him to the BLM; thus, it was reasonable for BLM (as well as his surety) to assume that the letter served as a notice of a change of address for Mr. Mann, as an individual.

The record in this case reveals a rather confusing trail of changed addresses, and no attempt by plaintiff to distinguish his personal address from that of Crowne. During the period of the lease, plaintiff used at least four different addresses for correspondence with BLM.[6] Against this backdrop, plaintiff's April

---

6. Mr. Mann's address when the lease reassignment was approved by BLM was 11462 Quivas Way, Denver, CO 80234. (R. at 349.) In August 1989, his letter to BLM listed his address as

14683 Cherry Street, Brighton, CO 80601. (R. at 612.) In March 1990, Plaintiff sent a letter on Pepperdine University letterhead to BLM rubberstamped with his Malibu address. (R. at 624.)

1, 1991 letter stands out as a clear and deliberate notice of a change of address. Consequently, the Lease Determination was mailed to his "last address of record" as required by 43 C.F.R. § 1810.2, and plaintiff is deemed to have received notice of the lease's expiration.

Finally, Plaintiff argues that the Lease Determination did not correctly refer to his lease and was "confusing"; therefore, he contends it should not be considered a decision regarding his lease. Plaintiff is correct that the Lease Determination contains the aforementioned typographical errors.[7] However, as defendant points out, the Lease Determination is addressed to plaintiff, references the geothermal well #12–24 drilled on the property, and refers to the correct issuance date for plaintiff's lease. The court agrees with defendant's contention that the totality of the Lease Determination makes clear that its subject is the plaintiff's lease. For this reason, the Lease Determination was a valid decision regarding plaintiff's lease pursuant to the requirements of 43 C.F.R. § 3244.4(b). Moreover, although plaintiff correctly contends that the Geothermal Steam Act and his lease entitle him to a hearing on the merits of the Lease Determination, the Act requires that requests for such a hearing must be made "within the thirty-day period after notice." 30 U.S.C. § 1011. Since plaintiff did not request such a hearing on the merits of the decision within thirty days of his constructive receipts of the Lease Determination, defendant did not violate his right to a hearing.[8]

*Due Process Claims*

Plaintiff makes two due process arguments. The first argument is incorporated into his breach of contract claim; he asserts that BLM's termination of his lease violated the due process protections incorporated into his lease. (Compl.¶ 61.) Plaintiff's complaint also alleges as an alternative theory and separate claim for relief that he was deprived of property in violation of the Fifth Amendment's Due Process Clause[9]. (Compl.¶ 74.)

The CFC's jurisdiction over claims for monetary awards based on violations of the Constitution extends "only to those constitutional provisions that fairly can be interpreted as mandating compensation for their violation." *Klump v. United States*, 38 Fed.Cl. 243, 245 (1997) (citing *United States v. Testan*, 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976)). It is well-settled that the Fifth Amendment Due Process clause is not such a "money mandating" provision. *Mullenberg v. United States*, 857 F.2d 770, 773 (Fed.Cir.1988) (the Due Process clause and equal protection clause do not obligate the United States to pay money damages).

Finally, plaintiff's April 1, 1991 letter mentioned the change of address to the Costa Mesa address in its text. (R. at 626.) As a general rule, it is unreasonable to expect the government to ascertain a leaseholder's current address based on individual documents bearing a different address than prior correspondence.

7. *See* notes 2 and 3, *supra*.

8. In the complaint, plaintiff further contends that BLM breached his lease by failing to extend it to a forty-year term (pursuant to his requests for an extension). (Compl.¶ 63.) Since this issue was not briefed, the Court assumes that plaintiff opted not to pursue this claim before the CFC. In addition, the record that exists on this point suggests that plaintiff's requests for an extension did not satisfy regulatory requirements. Plaintiff's letter of August 7, 1989 to BLM included a request for an extension, but did not include all the information required, namely that a leases must "submit a description of the diligent efforts completed for the lease year and planned for the following year .... includ[ing] but not limited to descriptions of negotiations for geothermal resources and or electricity sales contracts, marketing arrangements, electrical generating and/or transmission agreements, and operations conducted or planned to better define the geothermal resource." 43 C.F.R. § 3203–13(b). It is unfortunate that BLM does not appear to have responded to plaintiff's offer in the August 7, 1989 letter to supply whatever additional information the agency required; however, as a legal matter, the letter did not include the necessary documentation to act as a formal request for an extension Plaintiff's later discussions with an MMS representative regarding extension of the lease also do not qualify as a formal application for an extension, since MMS had authority over royalty and rental payments for the lease, but not over other administrative functions, including lease extensions.

9. The Fifth Amendment of the U.S. Constitution guarantees that "[n]o person ... shall be deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V.

However, "it is equally well-settled that where a claim appears to be within our jurisdictional statute, as for example one founded on statute or contract, that claim is not removed from our jurisdiction merely because a plaintiff must make a constitutional argument to prevail." *Alabama Hosp. Assoc. v. United States*, 228 Ct.Cl. 176, 656 F.2d 606, 609 (1981), *cert. denied*, 456 U.S. 943, 102 S.Ct. 2006, 72 L.Ed.2d 465 (1982). *See also Marathon Oil v. United States*, 16 Cl.Ct. 332 (1989); *Nursing Home, Inc. v. United States*, 214 Ct.Cl. 60, 556 F.2d 500 (1977); *Ulman v. United States*, 214 Ct.Cl. 308, 558 F.2d 1 (1977) (deciding due process claims in the context of the Medicare statute).

The Supreme Court has recognized that prior to taking an action which affects an interest in property, the government must provide

> notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections ... The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

Assuming *arguendo* that plaintiff is correct in asserting that "one of the implied terms and conditions of [his] lease was that the BLM would provide [him] with due process before it terminated his lease," the Court holds that the procedures followed by BLM, which were consistent with the regulations, did not violate the due process protections of the lease. Plaintiff overreaches in relying on *Hess v. Pawloski*, 274 U.S. 352, 356, 47 S.Ct. 632, 71 L.Ed. 1091 (1927) for the proposition that notice by mail is constitutionally sufficient only if it is actually received by the affected party. In *Hess*, the Supreme Court upheld the constitutionality of a Massachusetts statute establishing service upon a nonresident motorist by delivery of process to a registrar and by mailing a copy to the motorist. In *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 798–800, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), the

Supreme Court held that constructive notice by publication alone does not meet constitutional due process requirements. Rather, such notice must be supplemented by notice mailed to a mortgagee's last known available address, or by personal service. "Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party," the Court opined, "... if its name and address are reasonably ascertainable." *Id.* at 800, 103 S.Ct. 2706. BLM's practice of sending lease determinations to a leaseholder's last address of record satisfies the due process protections arguably incorporated into the terms of plaintiff's lease.

Finally, plaintiff argues that BLM acted in "bad faith" when it changed his address of record to the Costa Mesa address, but he has failed to present evidence that BLM changed his address of record with "a specific intent to injure" him. *Am–Pro Protective Agency, Inc. v. United States*, 281 F.3d 1234, 1240 (Fed.Cir.2002); *Contract Custom Drapery Serv., Inc. v. United States*, 6 Cl.Ct. 811, 817 (1984). Indeed, as previously discussed, BLM's action was a reasonable response to plaintiff's letter of April 1, 1991. Therefore, plaintiff does not prevail on his claim for breach based on defendant's alleged violation of the lease's implied right to procedural due process.

Because BLM did not breach plaintiff's lease, plaintiff's third claim for relief relies solely upon the Fifth Amendment's due process clause. Since the due process clause is not a "money mandating" constitutional provision, plaintiff's final claim that the defendant violated his Fifth Amendment due process rights is dismissed for lack of subject matter jurisdiction.

## CONCLUSION

The Court is well aware that the constructive receipt regulation incorporated into the BLM geothermal lease at issue in this case has produced a harsh result. Plaintiff invested substantial time and money developing his lease, only to learn that it had been terminated without his actual knowledge, despite BLM's awareness that the termination notice

**570**

was unclaimed, and therefore would likely go unchallenged. As Judge Nichols observed in *Ramos v. United States*, 231 Ct.Cl. 216, 683 F.2d 396 (1982), "[t]he 30–day notice jurisprudence is not a branch of law with which judges are anxious to be identified, but few of us can avoid it." This Court shares Judge Ramos' sentiment (in concurring with the judgment) that he was "not willing to indicate ... [he] would not construe [the law] strictly to save the [claim] if given any reasonable handle for doing so." *Id.* at 399. However, the plain language of the notice regulations incorporated into the lease, and the limits of the Court's jurisdiction, compel the conclusion reached here.

For the reasons discussed above, defendant's motion to dismiss, or in the alternative, for summary judgment is **GRANTED** and plaintiff's cross motion for summary judgment is **DENIED.**

Consistent with defendant's representation that plaintiff is entitled to reimbursement of post-expiration royalty payments, the government shall promptly remit to plaintiff all such payments made after the lease's February 6, 1994 expiration date, if it has not already done so.

The Clerk of Court is directed to enter judgment in favor of the defendant on the breach of contract claim, and to dismiss the constitutional due process claim without prejudice for lack of jurisdiction under RCFC 12(b)(1). Each party shall bear its own costs.

**IT IS SO ORDERED.**