**Stanley K. MANN, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 98–312C.**

United States Court of Federal Claims.

Filed Nov. 28, 2005.

Re-issued Dec. 7, 2005 [1].

---

1. This opinion is reissued for publication with some minor, non-substantive corrections.

Steven J. Lechner, Mountain States Legal Foundation, Lakewood, Colo., for plaintiff. William Perry Pendley, Mountain States Legal Foundation, Lakewood, Colo., of counsel.

Roger A. Hipp, Commercial Litigation Branch, Civil Division, Department of Justice, with whom were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Jeanne E. Davidson, Deputy Director, all of Washington, D.C., for defendant.

## *MEMORANDUM OPINION AND ORDER*

WOLSKI, Judge.

Following the Federal Circuit's determination that the government breached the terms of a lease agreement with plaintiff Stanley K. Mann, *Mann v. United States,* 334 F.3d 1048, 1052 (Fed.Cir.2003) ("*Mann II*"), the government has moved for partial summary judg-

ment regarding the damages sought by Mr. Mann. The government argues that Mr. Mann cannot recover lost profits, contending his claim is based on independent and collateral undertakings; and that Mr. Mann may not recover the expenses incurred by his predecessor lessee under the lease. For the reasons that follow, the government's motion is DENIED.

## I. BACKGROUND

The Geothermal Steam Act of 1970 authorizes the Secretary of the Interior to issue leases for the development and utilization of geothermal steam resources on lands administered by the Secretary. 30 U.S.C. §§ 1001–1025 (2000). The Act also specifies minimum rents and royalties for geothermal leases. 30 U.S.C. § 1004 (2000). In October 1981, the Bureau of Land Management (BLM) issued a geothermal lease under the Act to Southland Royalty Company. *Mann II*, 334 F.3d at 1049. The lease granted the lessee the "exclusive right and privilege to drill for, extract, produce, remove, utilize, sell, and dispose of geothermal steam and associated geothermal resources ... in or under the [leased lands]." Def.'s App. 1. The United States as lessor reserved a royalty interest of "10 percent on the amount or value of steam, or any other form of heat or other associated energy produced, processed, removed, sold, or utilized from [the leased lands] or reasonably susceptible to sale or utilization by the Lessee." Def.'s App. 2.

Southland immediately assigned the lease to Chaffee Geothermal Ltd. *See Mann v. United States*, 53 Fed.Cl. 562, 563 (2002), *rev'd*, *Mann II*, 334 F.3d at 1052. Chaffee drilled three wells on the leased property, with drilling beginning in summer 1981, and completed in fall 1982.[2] On December 20, 1985, Chaffee Geothermal assigned the lease to Mr. Mann, who had been an investor and officer of the company. Def.'s App. 5–6; Pl.'s App. 10; *see also* Tr. (Sept. 1, 2005) at 17. In return for accepting the rights and obligations under the lease, Mr. Mann released his claims against Chaffee, including those assigned to him by two other Chaffee employees. Pl.'s App. 19–25.

In anticipation of the lease assignment, Mr. Mann formed a corporation to market the geothermal resources, Crowne Geothermal, Ltd., of which he was the sole owner. Def.'s App. at 15–16. Mister Mann became the sole lessee of the property in question, and as the lessee he paid all expenses incurred in marketing and developing the geothermal resources in or under the leased area. Def.'s App. at 16–17. In November, 1993, the BLM attempted to send Mr. Mann a "lease determination" stating that the lease would expire unless he could demonstrate diligent efforts to commence commercial production or use of the geothermal resources associated with the leasehold. *See* Def.'s App. 7–8; Pl.'s Resp. to Def.'s Prop. Findings ¶ 7. This determination was returned unclaimed to the BLM. Def.'s Prop. Findings ¶ 8. Not having received a response from Mr. Mann, the BLM terminated the lease. *See* Def.'s App. at 9–12; Pl.'s App. at 320–21; Pl.'s Resp. to Def.'s Prop. Findings ¶ 9.

After this Court granted the government's motion for summary judgment and denied Mr. Mann's cross motion for judgment as to liability, the Federal Circuit reversed, holding in *Mann II* that the government improperly terminated the lease by not giving Mr. Mann the required notice. 334 F.3d at 1052. The BLM had sent the lease determination to an address that was not Mr. Mann's address of record; as a consequence, the government never provided constructive notice and therefore materially breached the lease. *Id.* The Federal Circuit remanded the matter back to this Court, where it was re-assigned to the undersigned. Having been found liable for breach, the government now moves for partial summary judgment as to damages, arguing that lost profits based on commercial use of the geothermal resources, and restitution based on Chaffee's expenses, are not available remedies.

## II. DISCUSSION

### A. Legal Standard

Summary judgment is appropriate only "if the pleadings, depositions, answers to inter-

**2.** Chaffee dug three wells, but one was lost at some point during cementing operations. *See*

Pl's App. at 106–110.

rogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Rules of the United States Court of Federal Claims ("RCFC"). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Sweats Fashions, Inc. v. Pannill Knitting Co.,* 833 F.2d 1560, 1562–63 (Fed.Cir.1987). Material facts are those "that might affect the outcome of the suit under the governing law." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. 2505. A dispute over facts is genuine "if the evidence is such that a reasonable [fact-finder] could return a verdict for the nonmoving party." *Id.* To demonstrate a genuine dispute over a material fact, the nonmoving party need not "produce evidence in a form that would be admissible at trial." *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. The moving party, however, must file with the Court the documentary evidence, such as exhibits, that support its assertions that material facts are beyond genuine dispute, *see* RCFC 56(h), unless it is basing its motion for summary judgment on the "absence of evidence to support the nonmoving party's case." *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. 2548; *see also Anchor Sav. Bank v. United States,* 59 Fed.Cl. 126, 140 (2003).

## B. Lost Profits

Mister Mann intends to base his lost profits claim upon the testimony of experts, who are of the opinion that Mann could have profitably utilized geothermal energy from the fluids located below the leased property. *See* Def.'s App. at 20–89 (expert report of Whittier and Crooks). His experts opine that the heat derived from this geothermal energy could have been profitably sold to the operators of greenhouse complexes, who would have located the complexes on the subject property. *Id.* The government argues that, as a matter of law, damages may not be recovered on such a basis, because the "damage model is based upon hypothetical business opportunities with third parties that never came close to fruition during the life of the lease." Mot. at 5–6. According to the government, this would violate what it calls "[t]he rule against damages based upon independent and collateral undertakings." *Id.* at 6. The Court disagrees.

The "rule" urged by the government is merely one aspect of the test used to determine whether damages were unforeseeable and, therefore, unrecoverable. Damages that are too remote or uncertain are not allowed, in contrast with those that are directly related to the breached contract and were within the parties' contemplation. The "independent and collateral undertakings" language has always been associated with this test, from its debut in Court of Claims jurisprudence in *Myerle v. United States,* 33 Ct.Cl. 1 (1897). *See id.* at 26–27 (holding breach of contract damages must be "the proximate result" of the breach and of a type "to have been foreseen by the parties"). This association persists to this day. *See, e.g., First Heights Bank, FSB v. United States,* 422 F.3d 1311, 1318 (Fed.Cir.2005) (calling the foregone profits "too remote to be compensable").

The question to be decided in such cases is whether lost profits that are claimed "are too remote to be classified as a natural result" of the breach of a particular contract. *Ramsey v. United States,* 121 Ct.Cl. 426, 434, 101 F.Supp. 353 (1951). Collateral undertakings that are too remote to be the basis for expectancy damages are those that are not based directly on the subject of the contract, but instead either involve the fruits of the contract or the opportunities crowded out by the breach of the contract. Such undertakings require a second step that is not itself inherent in the contract at issue. For instance, if a contract breach reduces the profits that are available for investment in other activities, or injures the reputation of the plaintiff and thereby diminishes his business opportunities, the loss of proceeds from such additional activities or opportunities is too remote to be recovered. *See, e.g., First Heights,* 422 F.3d at 1318 (holding profits from the reinvestment of tax savings are not recoverable); *Rumsfeld v. Freedom NY, Inc.,* 329 F.3d 1320, 1333 (Fed.Cir.2003) (holding that profits from contracts the contractor

might have received if it was on a list of approved contractors are too remote and uncertain); *Olin Jones Sand Co. v. United States,* 225 Ct.Cl. 741, 743–44 (1980) (denying lost profits claim based on a loss of bonding capacity). Such consequences are normally not foreseeable.

■ On the other hand, when the lost profits directly relate to the subject of the contract, they are recoverable, even if they would have required a transaction with a third party. Such cases were described by the Federal Circuit as ones in which "the only purpose of the contract ... was for the plaintiff to make profits on the subject of the contract—[e.g.,] through mining, dairy cow operations, or property resale." *Wells Fargo Bank, N.A. v. United States,* 88 F.3d 1012, 1023 (Fed.Cir.1996). In *Neely v. United States,* 152 Ct.Cl. 137, 285 F.2d 438 (1961), the Court of Claims allowed a claim for lost mining profits when the government breached a contract to lease land for mining. *Id.* at 442. In *Smokey Bear, Inc. v. United States,* 31 Fed.Cl. 805 (1994), involving a claimed breach of a licensing agreement, the Court of Federal Claims rejected the government's argument that the plaintiff's lost profits based on the potential sales of licensed Smokey Bear products were unrecoverable as a matter of law. *Id.* at 809. And the Federal Circuit in *Energy Capital Corp. v. United States,* 302 F.3d 1314 (Fed.Cir.2002), upheld an award of lost profits based on loans that the plaintiff could not initiate due to the government's breach. *Id.* at 1328–29. In each of these cases, the point of the underlying contract was to allow the plaintiff to profit from commercial transactions with third parties.

■ Mister Mann's case fits snugly within this second category, exemplified by *Neely* and *Smokey Bear.* The lease that was broken did not limit the use of geothermal energy to the heating of Mr. Mann's home, just as Mr. Neely was not limited to mining coal for his furnace. A person is not going to dig mines or drill wells just to provide for his own heat, any more than a company will pay a $25,000 royalty just so that its employees may wear Smokey Bear t-shirts. *Cf. Smokey Bear,* 31 Fed.Cl. at 806. Here, profits from the sale of the geothermal energy located under the leased property were *actually* contemplated by both parties to the lease. The lease expressly provides that the lessee shall have "the exclusive right and privilege to drill for, extract, produce, remove, utilize, *sell,* and dispose of geothermal steam and associated geothermal resources ... in or under the [leased lands]." Def.'s App. 1 (emphasis added). The lease further reserved to the Government a royalty interest of ten percent of all sales of heat generated under the lease. *Id.* at 2. Thus, the parties not only *contemplated* the type of business engagement that Mr. Mann alleges the breach prevented, but they actively *intended* that result, and formed the lease for the purpose of bringing about that result for their mutual benefit.

The government argues that Mr. Mann's reliance on a *hypothetical* deal with a third party dooms his claim as a matter of law, because it rests on assumptions about another business plan in addition to his own. Tr. (Sept. 1, 2005) at 6. But this merely goes to the strength of Mr. Mann's proof, not his ability to offer it. Geothermal heat does not, at this stage of the proceedings anyway, appear to be of the same fungible and portable nature as, say, coal, and thus the consequences of the breach must be measured in a manner other than merely looking up a commodity price. Mister Mann's experts have one opinion about the profitability of the use of this heat, *see* Def.'s App. 20–89, the government's expert has another, *see* Pl.'s App. 300, and that is why we have trials.

Moreover, the fact that the lost sales are "hypothetical" due to the government's breach does not distinguish Mr. Mann's situation from that presented in *Neely* or *Smokey Bear.* The government tries to avoid *Neely* by arguing that it "is best understood" as "creating a unique exception to the rule in the extremely rare situation where a third party has already completed the proposed business undertaking." Reply at 4. The problem with this interpretation is that it has already been explicitly rejected by the Federal Circuit, which concluded that *Neely* "is not limited to circumstances where the contract has been performed by another party." *Energy Capital,* 302 F.3d at 1326. And it

has long been recognized that a breaching party may not escape paying damages for lost profits merely because their loss makes them harder to prove. *See, e.g., Locke v. United States,* 151 Ct.Cl. 262, 267, 283 F.2d 521 (1960) ("The defendant who has wrongfully broken a contract should not be permitted to reap advantage from his own wrong by insisting on proof which by reason of his breach is unobtainable.").

The subject of the contract between Mr. Mann and the government was geothermal energy found below the leased property. *See* Def.'s App. 1–2. "Profits on the use of the subject of the contract itself ... are recoverable as damages." *California Fed. Bank, FSB v. United States,* 245 F.3d 1342, 1349 (Fed.Cir.2001). For the reasons stated above, the government's motion for summary judgment on Mr. Mann's claim for lost profits is DENIED.

### C. Recovery of Chaffee's Expenses

The government also moves for summary judgment to the extent Mr. Mann's damages claim rests on the value of the expenditures made by Mann's predecessor on the lease, Chaffee Geothermal. *See* Mot. at 7–9. First, the government argues that restitution damages would be based on the implied-in-law claim of unjust enrichment, which is beyond our Court's jurisdiction. *Id.* at 8. Second, it argues that awarding restitution to Mr. Mann would result in a "windfall" because Chaffee, not Mann, incurred the expenses at issue. *Id.* at 9.

■ It is beyond dispute that this Court lacks jurisdiction over implied-in-law contracts. *See, e.g., Hercules, Inc. v. United States,* 516 U.S. 417, 423, 116 S.Ct. 981, 134 L.Ed.2d 47 (1996); *Aetna Cas. & Surety Co. v. United States,* 228 Ct.Cl. 146, 164, 655 F.2d 1047 (1981); *Trauma Serv. Group v. United States,* 104 F.3d 1321, 1324–25 (Fed. Cir.1997). This case, however, involves an express contract between Mr. Mann and the government, and not an implied-in-law contract. Restitution damages for breach of an *actual* contract (whether express or implied-in-fact) may be awarded against the government in this Court. *See, e.g., Mobil Oil Exploration and Producing Southeast, Inc. v.*

*United States,* 530 U.S. 604, 608, 120 S.Ct. 2423, 147 L.Ed.2d 528 (2000); *Landmark Land Co. v. FDIC,* 256 F.3d 1365, 1369 (Fed. Cir.2001). "[W]hen one party to a contract repudiates the contract, the other party is entitled to restitution for any benefit that he has conferred on the repudiating party by way of part performance or reliance." *Landmark Land Co.,* 256 F.3d at 1372 (internal quotes omitted; alteration in original).

Turning to the government's second point, the government essentially argues that Mr. Mann is not the one who conferred a benefit upon it, inasmuch as the benefit is based on the expenditures of Chaffee Geothermal, and not Mann. Because the money invested in drilling and exploration did not come directly out of Mr. Mann's pocket, defendant argues, there is nothing to put back in it. The Court rejects this argument for several reasons.

■ First, the measure of breach of contract damages under restitution is broader than the mere expenditures made by the injured party. These damages may be based on either "the reasonable value to the other party of what he received in terms of what it would have cost him to obtain it from a person in the claimant's position, or ... the extent to which the other party's property has been increased in value or his other interests advanced." *Restatement (Second) of Contracts* § 371; *see also* 3 E. Allan Farnsworth, *Farnsworth on Contracts* § 12.19, at 324 ("The objective [of restitution] is not to put the *injured* party ... back in the position that party would have been in if the contract had not been made[, but] rather, to put the party *in breach* back in the position that party would have been in if the contract had not been made.").

■ Second, it cannot be said as a matter of law that Mr. Mann was *not* the party conferring upon the government the benefit of the drilling and exploration efforts. Even though he did not directly pay for them, as assignee of the lease, he obtained the right to their use. He thus avoided having to make the expenditures himself, and these improvements were as valuable to him as they would have been had he paid for them. *See* Pl.'s App. 313 (BLM crediting Mr. Mann's compa-

ny with $ 854,521.52 of expenditures by Chaffee for diligent exploration purposes).

Third, the question of whether a restitution award based on Chaffee's expenditures would constitute an "unfair windfall," *see, e.g., Hansen Bancorp, Inc. v. United States,* 367 F.3d 1297, 1315 (Fed.Cir.2004), is a factual issue that is disputed. According to Mr. Mann, in return for the lease assignment, he released Chaffee from claims he possessed against the company. *See* Pl.'s App. 19–25. Moreover, as an investor of Chaffee at the time the expenditures were made, *see* Pl.'s App. 10; *see also* Tr. (Sept. 1, 2005) at 17, he may, in fact, have contributed his own money toward these expenditures. If Mr. Mann had obtained the lease by first becoming sole owner of Chaffee, then dissolving the corporation and assigning the lease and other assets to himself, it would not seem to matter whether he initially paid for the expenditures for purposes of restitution. No authority cited by defendant demonstrates the contrary, nor has the actual sequence of events been sufficiently distinguished from this example.

Indeed, if the reason that "windfalls" are to be avoided is that "the non-breaching party should not be placed in a better position through the award of damages than if there had been no breach," *Bluebonnet Sav. Bank, FSB v. United States,* 339 F.3d 1341, 1345 (Fed.Cir.2003), it is far from clear that this could result from Mr. Mann's claim. Without the breach, he would be in a position to use the wells drilled by Chaffee, and the information and other benefits derived therefrom. Because of the breach, he cannot. And had there been no contract with the government—say, instead the wells were drilled on Chaffee's own property—Mr. Mann, having been assigned the right by Chaffee to use its equipment to sell geothermal heat located under the property, would retain this valuable interest.

The government has cited no authority for its proposition that Mr. Mann may not, as successor to a leasehold, seek restitution for the benefits received by the government due to the latter's breach of a contract. It relies on cases from other Circuits concerning the equitable remedy of unjust enrichment, not restitution for breach of contract. *See* Reply at 6 (citing *Mertens v. Hewitt Assocs.,* 948 F.2d 607 (9th Cir.1991), and *Scanwell Labs., Inc. v. Thomas,* 521 F.2d 941 (D.C.Cir.1975)). The Court is not convinced that, as a matter of law, restitution may not be sought.[3]

## III. CONCLUSION

For the foregoing reasons, the government's motion for partial summary judgment is **DENIED**.

**IT IS SO ORDERED.**

---

3. This does not mean, however, that Mr. Mann may not be limited to an amount less than the expenditures made by Chaffee—for instance, the value of the claims he released, or of the improvements at the time he became the lessee. These issues are not presently before the Court.