**Donald H. KUMFERMAN, Petitioner,**

v.

**DEPARTMENT OF the NAVY, Respondent.**

**Appeal No. 85–2147.**

United States Court of Appeals, Federal Circuit.

Feb. 28, 1986.

Paul L. Gabbert, Santa Monica, Cal., for petitioner.

John S. Groat, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., for respondent. With him on brief were Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director and Thomas W. Petersen, Asst. Director. Thomas Russell, Office of Gen. Counsel, Dept. of Navy, of counsel.

Before DAVIS, Circuit Judge, MILLER, Senior Circuit Judge and NEWMAN, Circuit Judge.

PAULINE NEWMAN, Circuit Judge.

Donald H. Kumferman appeals the decision of the Merit Systems Protection Board (MSPB or Board), *Kumferman v. Department of the Navy*, 19 M.S.P.R. 5 (1984),

sustaining his removal from the Department of the Navy. We affirm.

## Background

Mr. Kumferman was employed by the Department of the Navy (agency) as a General Engineer at the Naval Weapons Center in China Lake, California. His job responsibilities included the assessment of damage caused by experimental and developmental warheads. A search of petitioner's vehicles and on-base residence on January 19, 1980 uncovered the following items of government property: a tool box with tools; a microphone; Cannon, Arriflex, and Bolex movie cameras; a Kodak single lens reflex camera; and a liquid head tripod.

The agency proposed to remove Kumferman on September 3, 1981 on the charge of unauthorized possession of the aforementioned items of government property. In addition, the agency charged petitioner with theft of the tools, the Arriflex, Bolex, and Kodak cameras, and the tripod, as well as with falsification of a material fact in connection with official records concerning the condition or location of the Arriflex and Bolex cameras. With regard to the latter charge, the agency alleged that Kumferman had claimed on July 20 and August 1, 1979 that the Arriflex camera had been shipped to a New Mexico facility of the agency where it had been damaged in the course of a test of a warhead and cannibalized for parts. The agency also alleged that the petitioner had claimed on June 20, 1979 that the Bolex camera had been shipped to New Mexico in conjunction with a Navy contract when in fact this camera was neither shipped to, nor expected to be shipped to, this facility. After considering · the written response by Kumferman's attorney, the agency issued a decision on October 20, 1981 removing petitioner from his position effective October 23, 1981.

Kumferman filed a timely notice of appeal with the San Francisco Regional Office of the MSPB. In a decision dated March 11, 1982 the presiding official found all of the charges proven by a preponderance of the evidence except for the charges of unauthorized possession of the tool box and tools (although the charge of theft of the tools was sustained) and theft of the Arriflex camera. The presiding official also found that the offenses had a sufficient adverse effect on the efficiency of the service to warrant imposition of a penalty, that the penalty of removal was reasonable under the circumstances, and that Kumferman's affirmative defenses had not been proven.

The Board denied Kumferman's petition for review on January 16, 1984 for failure to meet the criteria set forth at 5 C.F.R. § 1201.115. Copies of the Board's decision were mailed to the petitioner on January 19, 1984 by certified mail, return receipt requested, and by regular mail to petitioner's attorney of record. On January 11, 1985 Kumferman filed a notice of appeal with this court, stating that he did not receive a copy of the Board's decision until January 4, 1985. He explained that the Board had sent the decision to his old address, that the Post Office had returned it to the MSPB undelivered but that "no effective follow up" was done, and that it was only through the vigorous efforts of his Congressman that he was finally able to secure a copy of the decision.

## The Issue of Timeliness

Pursuant to 5 U.S.C. § 7703(b)(1), appeal "must be filed within 30 days after the date the petitioner received notice of the final order or decision of the Board". The government maintains that this court lacks jurisdiction because this appeal was filed nearly one year after the date the Board's decision became final.

Although the statute explicitly refers to "the date the petitioner received" the decision, and the Board's records show that the certified letter to Kumferman was returned undelivered, the government argues that mailing by regular mail to Kumferman's attorney, whether or not the letter was received, is sufficient to start the thirty day statutory period.

The general rule applicable to jurisdictional notice statutes that expressly require

receipt of the notice by the person charged, is that proof of mailing, without more, does not satisfy the statute. "The critical date for determining timely appeal to this court ... is the date petitioner received the Board's opinion and order." *Strickland v. Merit Systems Protection Board*, 748 F.2d 681, 684 (Fed.Cir.1984). The government does not seek to rely on proof of mailing of the notice to Kumferman, because the record shows that Kumferman did not receive the certified mailing. Instead, the government seeks to rely on proof of mailing to Kumferman's attorney then of record, since the record is silent as to whether the notice was received by the attorney.

At the time the decision was mailed, the Board's file contained correspondence from Kumferman showing his correct, current mailing address, different from that used by the Board. On August 12, 1984, several months after the Board's decision had become final, Kumferman again wrote to the Board to provide new information which he wrote would help the Board "to reach a timely and just decision relative to my appeal". Kumferman received no response to this letter, nor the information that his appeal had been decided many months before.

These facts distinguish the present case from *Gragg v. United States*, 717 F.2d 1343 (Fed.Cir.1983), on which the agency relies. In *Gragg* both the petitioner and his designated representative acknowledged that they received copies of the Board's decision by certified mail, both with return receipts. Any presumption of receipt in this case based on the mere mailing to Kumferman's attorney is rebutted by the uncontroverted evidence of Kumferman's diligent efforts over the course of a year to obtain a decision in his case. We decline to charge Kumferman with presumptive receipt of this decision when the Board knew he did not have actual receipt of the certified mailing, when the Board did not answer Kumferman's status inquiries, when the Board had received correspondence showing his correct address, and when only through his Congressman did he learn that a decision had been reached a year earlier. As Kumferman filed his notice of appeal within thirty days after the date he received the decision, we hold that his appeal was timely filed in terms of 5 U.S.C. § 7703(b)(1).

### The Merits

On the merits of the appeal, we consider whether there was substantial evidence to support the Board's findings, or whether the Board's decision was otherwise contrary to law. 5 U.S.C. § 7703(c).

### A.

■ On the charge of unauthorized possession of government property, paragraph 5(c) of NAVWPNCENINST 4520.2D is pertinent:

> *Government property* may be removed by employees from its official location to their residence on the Center for official use with the approval of their supervisor. To protect the employee from embarrassment, approval shall be confirmed by proper written documentation signed by the employee's supervisor. When material or equipment is of high value, readily susceptible to pilferage ... the supervisor's approval *must* be in writing. [Emphasis in original.]

In his\ brief Kumferman "concedes that there is no evidence demonstrating that he had specific authorization to possess the equipment at his residence", but argues that the record does not establish that his possession was unauthorized. It was uncontroverted that Kumferman was authorized to use the equipment in his work.

Kumferman did not explain what "official use" of the items was made at his residence. The record shows that it was accepted practice for an employee to take equipment home the day before the employee was to travel with the equipment, but there was no evidence that Mr. Kumferman had been travelling or had planned to travel on work-related business at the time the items were discovered at his residence. Kumferman's supervisors denied

authorizing him to have the items in his residence. We conclude that substantial evidence supports the presiding official's finding of unauthorized possession of government property. *DeWitt v. Department of the Navy*, 747 F.2d 1442, 1444 (Fed.Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 1759, 84 L.Ed.2d 822 (1985).

### B.

■ We next consider the charge of theft of the tools, the Bolex and Kodak cameras, and the tripod. These items were found in Kumferman's home. Kumferman testified that he did not intend to steal the items and submitted the results of a polygraph examination to this effect. The presiding official nonetheless found that the surrounding circumstances were sufficient circumstantial evidence of an intent to steal. These circumstances included the following: misstatements made by Kumferman to the Naval Investigative Service concerning his authority to possess the property at his residence; the length of time the property was in his possession, nearly seven months in the case of the Bolex camera; and the asserted removal or partial covering of identifying information on the property tag on the tripod. Credibility determinations are the province of the presiding official. *Griessenauer v. Department of Energy*, 754 F.2d 361 (Fed. Cir.1985). We conclude that the presiding official's determination was supported by substantial evidence, and although Kumferman presented evidence of the absence of intent to steal, we do not independently weigh the evidence. *See Green v. United States*, 650 F.2d 285, 222 Ct.Cl. 600, 603–04 (1980).

### C.

■ The last charge involved falsifying material facts in connection with official records. In *Naekel v. Department of Transportation*, 782 F.2d 975, 977 (Fed. Cir.1986), this court stated that "[t]o sustain a charge of '[s]ubmitting false information on official government documents,' the agency must prove by a preponderance of the evidence that the employee knowingly supplied wrong information, and that he did so with the intention of defrauding the agency." In establishing an employee's intention to deceive or mislead the agency, circumstantial evidence may be considered. *Id.* at 978; *Tucker v. United States*, 624 F.2d 1029, 1033, 224 Ct.Cl. 266, 274 (1980).

The presiding official referred to Kumferman's admission that he had reported to the property technician on July 20, 1979 that the Arriflex camera had been sent to New Mexico where it had been damaged and dismantled. On August 1, 1979 Kumferman sought to remove the camera from the agency records. However, in December 1979, nearly a month before the agency searched his residence, Kumferman discovered the Arriflex camera in a file cabinet and attempted to reenter the camera on the agency's records. Kumferman's testimony on this point was supported by Larry Zabel, a division head at the Weapons Center.

Kumferman testified that a camera bearing the same two initial serial numbers as the Arriflex camera had been destroyed at the New Mexico facility; as he was unable to find the Arriflex camera, he had "jumped at the conclusion" that the destroyed camera was the missing Arriflex. The agency presented no evidence on the second element of the charge, namely, an intent to defraud the agency, nor did the Board make any specific findings thereto.

With due deference to the presiding official's credibility determinations, *Griessenauer, supra*, we nonetheless find this charge unsupported by substantial evidence. Even if Kumferman was reckless in stating that the camera was destroyed when it had been mislaid, this does not constitute substantial evidence of an intent to defraud in view of the evidence of the attempted reentry of the camera on the records.

■ However, we uphold the determination that Kumferman knowingly submitted false information in connection with the Bolex camera. Evidence was presented that this camera was ordered in April 1979 and was to have been received in mid-May.

In June 1979 Kumferman told Mary Plauson that he planned to send the camera to New Mexico. Kumferman testified that he did not examine the camera until a month after it had arrived, when he found some problems with it. The record is unclear if the camera was examined before or after the conversation with Ms. Plauson.

The presiding official reasoned that if Mr. Kumferman had not yet examined the Bolex camera, there was no basis for his stating that this particular camera would be shipped to New Mexico. And if the camera was found by Kumferman not suitable for shipment, Kumferman's statement would still be inaccurate. In view of. the fact that the Bolex camera was found in Kumferman's home seven months later, the presiding official could consider this circumstantial evidence of an intent to deceive the agency. The presiding official did not find a credible explanation for the delay in shipment. We conclude that substantial evidence supports the presiding official's finding on this charge. *See Ahles v. Department of Justice,* 768 F.2d 327, 330 (Fed.Cir.1985).

### D.

■ Petitioner argues that a nexus has not been established between his alleged misconduct and the efficiency of the service. The presiding official found that the established falsification of records, theft of government property, and unauthorized possession of government property had a sufficient adverse effect on the efficiency of the service to warrant the imposition of a penalty, *citing Phillips v. Bergland,* 586 F.2d 1007 (4th Cir.1978). The agency's removal letter stated that:

> Persons with access to classified information are required to be trustworthy and reliable. The charges as set forth against you in reference (a) go directly to your honesty, trustworthiness, and reliability and, if true, impair both your ability to perform your classified duties and the ability of this installation to perform its sensitive mission.

Kumferman argues that there is an absence of impact of the offenses on his personal job performance or that of other employees, and therefore that a penalty could not be imposed if petitioner's conduct did not affect his or his coworkers' performance. The presiding official held that the petitioner did not overcome the presumption of nexus established by the agency. *See Gonzales v. Defense Logistics Agency,* 772 F.2d 887, 889 (Fed.Cir.1985). We have reviewed the evidence and find that the Board's decision on this point is in accord with 5 U.S.C. § 7513(a). *See Hayes v. Department of the Navy,* 727 F.2d 1535, 1539 (Fed.Cir.1984).

### E.

■ Kumferman also argues that the Board abused its discretion in sustaining his removal because it failed to consider all of the factors set forth in *Douglas v. Veterans Administration,* 5 MSPB 313, 5 M.S.P.R. 280 (1980). It is not reversible error if the Board fails expressly to discuss all of the *Douglas* factors. *Nagel v. Department of Health and Human Services,* 707 F.2d 1384, 1386 (Fed.Cir.1983). The Board need only determine that the agency considered the factors significant to the particular case. *Hayes,* 727 F.2d at 1540. *Connolly v. Department of Justice,* 766 F.2d 507, 514 (Fed.Cir.1985).

Theft of government property and the falsification of records are offenses that have been viewed in the past as sufficiently serious to warrant removal. *See, e.g., De-Witt,* 747 F.2d at 1444–46 (theft); *Brewer v. United States Postal Service,* 647 F.2d 1093, 1098, 227. Ct.Cl. 276, 282–83 (1981) (falsification of time cards), *cert. denied* 454 U.S. 1144, 102 S.Ct. 1005, 71 L.Ed.2d 296 (1982). While we have not upheld one charge against Kumferman of falsification in connection with official records, other serious charges were sustained. Although the penalty of removal is severe, we conclude that it is within the discretionary authority of the Board "because the record reflects a reasoned concern for the factors

appropriate to evaluating a penalty". *De-Witt,* 747 F.2d at 1445.

Kumferman argues that the penalty was imposed solely for the purpose of punishment. The record adequately supports the presiding official's finding that the penalty was also selected "because the agency could no longer trust appellant with its property".

### F.

Kumferman raises two allegations of harmful procedual error. First, Kumferman objects to the delay of seven and a half months by the agency in proposing his removal, asserting that the agency failed to comply with paragraph C(3) of OPNAV-NOTE 12752, Appendix A (October 20, 1980). This regulation states that "the corrective influence of a suspension ... is greatly diminished if it follows the offense by six months or a year"; it does not treat the timeliness of a decision proposing to remove an employee. It does, however, state that "disciplinary actions should not be taken precipitately because important facts might be ignored."

The record shows that administrative action in this case was deferred pending resolution of an investigation by agents of the Naval Investigative Service. The results of this investigation were provided to the agency on July 6, 1981, and the letter of proposed removal was dated September 3, 1981. Mr. Kumferman has not shown that he was prejudiced by the delay, and we agree with the Board that no harmful procedural error was created by the passage of time in this case. 5 U.S.C. § 7701(c)(2)(A); *see also Shaw v. United States Postal Service,* 697 F.2d 1078, 1080–81 (Fed.Cir.1983).

Second, Kumferman argues that harmful error occurred because the proposing and deciding officials issued their decisions without the benefit of the allegedly exculpatory information provided by Mr. Zabel to the agents of the Naval Investigative Service. This information included the corroborating evidence concerning the charge of falsification of records in connection with the Arriflex camera. Both the proposing official and the deciding official admitted at the Board hearing that this information could have had a probative impact upon their decisions on this charge. We need not decide if harmful procedural error was committed by the agency, as we have determined that the Board's decision on this charge is unsupported by substantial evidence. However, we conclude that the Board's decision with respect to the other charges is supported by substantial evidence, and that the penalty of removal for these charges was neither an abuse of discretion nor inimical to the efficiency of the service. The decision of the MSPB is affirmed.

AFFIRMED.