NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent. It is a public record.

# United States Court of Appeals for the Federal Circuit

04-3399

WILLIAM D. FREEMAN,

Petitioner,

v.

UNITED STATES POSTAL SERVICE,

Respondent.

_____

DECIDED: September 6, 2005

_____

Before CLEVENGER, BRYSON, and PROST, Circuit Judges.

PROST, Circuit Judge.

William D. Freeman appeals from a decision of the Merit Systems Protection Board ("Board" or "MSPB") that sustained Freeman's removal from the United States Postal Service, Case No. BN0752030133-I-1. Freeman contends that the finding that he committed a willful misrepresentation was unsupported by substantial evidence or, alternatively, that the penalty of removal was unreasonably harsh. We reverse the finding of willful misrepresentation, so it is unnecessary to reach the penalty issue, and remand for determination of an appropriate remedy.

## I. BACKGROUND

William D. Freeman worked for the United States Postal Service ("USPS" or "agency") for twelve years prior to being removed on May 5, 2003. The basis for his removal was a charge of misrepresentation related to a forearm/wrist tendonitis condition. Freeman suffered this injury on August 17, 2002, while delivering mail. He stayed away from work for a substantial portion of the next two months, and on February 3, 2003 the Office of Workers Compensation Programs ("OWCP") accepted his claim that the injury was caused by his duties as a rural letter carrier.

After being informed that Freeman was delivering newspapers during the period he was away from work, the USPS investigated Freeman. It charged him with willful misrepresentation and listed three specifications under this charge. First, it accused Freeman of misrepresenting his physical condition in order to extend his time away from work. Specifically, the agency contended that (1) Freeman misrepresented his medical condition or true physical condition; (2) his delivery of newspapers was inconsistent with the medical restrictions his doctor had imposed; and (3) he was able to return to his regular duties at the post office as of September 25, 2002, not October 9, when he actually returned. Second, the agency described his alleged misrepresentation as requesting and receiving Continuation of Pay from August 31 to October 1 while maintaining a daily newspaper delivery job. Finally, it contended that he intentionally wrote an incorrect date on the OWCP CA-7 form that he filed just before returning to work, extending his "leave buy back" period by one day through October 10, 2002. For these alleged offenses, the agency removed Freeman from his position as a rural letter carrier.

04-3399                                        2

Freeman challenged his removal before the MSPB. The administrative judge rejected every specification except one. She found that Freeman had not misrepresented his medical condition, because the newspaper route generally took less than an hour each day and could mostly be done using his left (non-injured) hand, whereas his position with the USPS required him to spend approximately six hours a day sorting mail, extensively using his right hand. She also determined that Freeman had inquired about returning to work, but the agency barred him until he obtained medical clearance. He made a reasonable effort to obtain such clearance but was delayed by his doctor's vacation. Furthermore, the administrative judge did not think Freeman "misled the agency" by requesting Continuation of Pay while delivering newspapers, because, as of August 31, the agency had already been informed that Freeman had been placed off work and was continuing to perform his daily newspaper route.

The only specification the administrative judge sustained was misrepresentation of the October ending date for leave buy back. Freeman concedes, at least for purposes of this appeal, that he made an error on the CA-7 form. Under the "Compensation is claimed for: Inclusive Date Range" heading, he indicated that the range was from August 17, 2002 to October 10, 2002. His leave actually extended until October 9, which was also the day he returned to work.[1] The administrative judge rejected Freeman's two affirmative defenses for supplying the incorrect information: non-accommodation of his disabilities, including Attention Deficit Hyperactivity Disorder

---

[1] The government also initially challenged the August 17 date, because Freeman worked several days in August after that point. However, the government no longer accuses him of any wrongdoing with respect to the August dates.

(ADHD), and violation of due process. The administrative judge found that Freeman had never indicated in the past that he needed accommodation to perform his job duties; on that basis, she concluded that the agency did not neglect its responsibility to accommodate him when he filled out his OWCP form. The administrative judge also found that Freeman had failed to establish that he actually had any of the other disabilities he claimed to have. Finally, the administrative judge found that Freeman had been accorded all the procedures outlined in 5 U.S.C. § 7513(b), so he had not been denied due process. Concluding that Freeman "failed to offer a plausible explanation for the incorrect information furnished on the OWCP form[,]" the administrative judge inferred that he "knowingly provided the wrong information." Because the misrepresentation on the OWCP form went "to the essence of the charge," the administrative judge sustained the overall charge of misrepresentation.

The administrative judge also held that removal was a reasonable penalty for the sole affirmed specification based on the "very serious nature of the appellant's misconduct." She found that the agency had properly exercised its discretion over Freeman's penalty by considering factors listed in Douglas v. Veterans Administration, 5 M.S.P.R. 280, 305-06 (1981).

On June 18, 2004, the MSPB summarily affirmed.

## II. DISCUSSION

Freeman filed a timely petition for review to this court. We have jurisdiction to review a final decision of the MSPB under 5 U.S.C. §§ 7703(a)(1) & 7703(b)(1).

## A. Standard of Review

This court will overturn a decision of the MSPB if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (2000). Substantial evidence is evidence sufficient to justify, if the case were tried to a jury, a refusal to direct a verdict for the party against whom the verdict was rendered. Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951).

## B. Analysis

Misrepresentation involves two elements that the government must prove by a preponderance of the evidence: (1) supplying incorrect information and (2) doing so knowingly, with an intent to deceive or mislead the agency. See Bryant v. Dep't of the Army, 84 M.S.P.R. 202, 207 (1999), aff'd, 243 F.3d 559 (Fed. Cir. 2000). Freeman and the government principally dispute whether substantial evidence of intent supports the administrative judge's decision.

Freeman contends that the administrative judge improperly shifted the burden of proof from the agency to him on the issue of intent. In his view, the administrative judge went too far in requiring him to prove a lack of deceptive intent, when the government bears the burden of proof on this issue. He claims there is no evidence that the incorrect dates he entered on his form were anything other than simple mistakes, which may have been due to his attention deficit disorder.

The government contends that the case law supports finding intent to deceive when the accused offers no credible explanation for supplying incorrect information.

For that proposition, it cites Kumferman v. Department of the Navy, 785 F.2d 286, 290-91 (Fed. Cir. 1986). The government also asserts that Freeman did not argue before the administrative judge that his error was the product of simple inadvertence, but only that his allegedly low IQ and/or ADHD caused his error, a contention that the administrative judge rejected.

The burden of proof rests on the agency to show intent; if it fails to do so, Freeman is not required to disprove intent. It is true that we have, in some cases, permitted an inference of intent when an employee failed to explain false information. See Kumferman, 785 F.2d at 290-91. However, that case presented us with additional circumstantial evidence of intent, namely, a missing government-owned camera that was found in the employee's home seven months after he stated he was planning to ship it out for repair. Id. at 291. If, on the other hand, the employee does provide a plausible explanation, "[t]he fact of an incorrect response cannot control the question of intent." Naekel v. Dep't of Transp., 782 F.2d 975, 978 (Fed. Cir. 1986). In the present case, the record shows that Freeman provided a plausible explanation for supplying erroneous information.

According to his psychiatrist, Freeman suffered from moderate to severe ADHD, which impaired his ability to concentrate on paperwork. The administrative judge acknowledged that Freeman had ADHD, but relied on the fact that Freeman had never before sought workplace accommodations for his disorder to conclude that he should have had no problems filling out the OWCP form. In our view, the conclusion that Freeman's ADHD had no effect on his ability to fill out the form does not follow from the fact that he could perform his job without accommodation. There is no evidence that

Freeman's job duties ordinarily involved filling out forms. He may well have been entirely capable of sorting and delivering mail without accommodation, and yet have suffered lapses in concentration that made unfamiliar paperwork difficult to follow.[2] It is plausible that this condition could have led to mistakes.

We do not think this explanation differs in kind from the one Freeman presented to the administrative judge. As the administrative judge noted, "individuals with [ADHD] may fail to give close attention to details or make careless mistakes in schoolwork or other tasks. Work is often messy and performed carelessly and without considered thought." Thus, ADHD and inadvertence are not two distinct theories; ADHD is an explanation of why Freeman was prone to mistakes and lends credence to his "mistake" explanation.

The government apparently provided no evidence of intent to deceive beyond the bare falsity of the information Freeman submitted. Evidence that Freeman never needed accommodation to perform his letter carrier duties is not evidence of deceptive intent, because it does not lead to the conclusion that he could be expected to fill out

---

[2] We question the administrative judge's conclusion that the OWCP form was sufficiently clear that she doubted "that the appellant's ADHD impacted his ability to complete the OWCP form correctly." For example, the form has checkboxes for different types of claims for compensation, such as "Leave buy back" and "Other wage loss," with spaces to enter a date range for each type. Freeman filled out the form at least twice. Once, he checked both of these boxes, but only provided a date range for "Other wage loss." Another time, on the copy of the form the government apparently received, he checked "Leave buy back" only and supplied the date range on that line. Also, the form requests date ranges "From" a first date "To" a second date. It is not entirely clear whether the employee is supposed to enter the first and last dates for which leave is claimed or to provide the last date worked and the date of return. These particular sources of confusion do not appear to have directly caused Freeman's error, but they tend to show that filling out an unfamiliar form can be more difficult than normal job duties for someone diagnosed with moderate to severe ADHD.

the CA-7 form mistake-free. Under <u>Naekel</u>, intent cannot be inferred in such circumstances from the falsity of the information alone, so there is no substantial evidence of intent to deceive or mislead. 782 F.2d at 978. On that basis, we overturn the administrative judge's decision to sustain the charge of willful misrepresentation.

Our reversal moots the controversy over whether the penalty was reasonable, so we express no opinion on that issue.

## III. CONCLUSION

For the reasons stated above, we reverse the decision of the MSPB and remand for determination of an appropriate remedy in favor of Freeman.