NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**BARBARA EXUM,**

*Petitioner,*

**v.**

**DEPARTMENT OF HOMELAND SECURITY,**

*Respondent.*

---

2011-3037

---

Petition for review of an arbitrator's decision by John M. Donoghue.

---

Decided: October 20, 2011

---

BARBARA J. EXUM, of New York, New York, pro se.

NELSON R. RICHARDS, Trial Attorney, Commercial Litigation Branch, Classification Unit, United States Department of Justice, of Washington, DC, for respondent. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and FRANKLIN E. WHITE, JR., Assistant Director.

---

Before LINN, PROST, and REYNA, *Circuit Judges*.

PER CURIAM.

Barbara Exum appeals from the October 7, 2010 arbitration award affirming her removal by the Department of Homeland Security from her position as an immigration services officer. Because the arbitrator's award was supported by substantial evidence, was not arbitrary and capricious, and was in accordance with the law, we *affirm*.

I

Ms. Exum worked as an immigration services officer ("ISO") at the Department of Homeland Security's U.S. Citizenship and Immigration Services office ("Agency"). In this capacity, she adjudicated applications of aliens seeking to become lawful permanent residents. In particular, she was responsible for performing research, conducting investigations, and rendering final decisions on applications. Federal regulations require that immigrations officers such as Ms. Exum interview the applicants. *See* 8 C.F.R. § 245.6. Applicants are instructed to bring certain documents with them to the interviews.

Ms. Exum's employment problems originated because she refused to conduct interviews of certain applicants who failed to bring proper documentation with them to the interviews (e.g., birth certificates, divorce decrees, etc.). On several occasions, Ms. Exum's supervisors instructed her to perform these interviews and obtain the missing documentation through a request for evidence ("RFE"), a procedural device that permits an ISO to obtain documentation outside the interview process. *See* 8 C.F.R. § 103.2(b)(8)(ii),(iii). Ms. Exum, however, refused to comply with these instructions, and, as a result, was

terminated. The Agency's termination letter listed five specific instances where Ms. Exum disobeyed her supervisor's instructions, all relating to her refusals to conduct interviews.

After the first three instances of disobedience (referred to as "Specifications 1-3"), which all occurred in the fall of 2008, Ms. Exum was placed on a "performance improvement period." This process involved explaining to Ms. Exum in a letter why the conduct outlined in Specifications 1-3 was unacceptable. Ms. Exum refused to sign the letter, and she failed to attend any of the counseling sessions proposed in the letter.

A week after being placed on the performance improvement plan, Ms. Exum refused to interview an applicant who had not brought an original copy of his birth certificate to the interview. Noting that it was snowing and that the applicant lived over three hours away from the field office, the supervisor instructed Ms. Exum to conduct the interview and issue a RFE. Ms. Exum refused. This incident formed the basis for Specification 4. Regarding Specification 5, Ms. Exum once again refused to interview an applicant and issue a RFE.

The Agency issued a proposed termination letter to Ms. Exum on February 11, 2009. The Agency then terminated her employment on March 18, 2009 after an oral hearing. Ms. Exum challenged this decision before an arbitrator, but the arbitrator sustained the Agency's decision and denied her grievance. Ms. Exum appealed.

II

Ms. Exum's grievance is based upon removal, which is an adverse action under 5 U.S.C. § 7512(1). Under 5

U.S.C. § 7121(f), an arbitrator's decision regarding an adverse action listed in § 7512 is reviewed "in the same manner and under the same conditions as if the matter had been decided by the [Merit Systems Protection] Board."

We have jurisdiction to review the Board's final decisions under 28 U.S.C. § 1295(a)(9). Our scope of review for a Board decision, however, is limited. We may only set aside such a decision if it was "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *see Conyers v. Merit Sys. Prot. Bd.*, 388 F.3d 1380, 1381 (Fed. Cir. 2004). "[T]he arbitrary and capricious standard is extremely narrow . . . and allows the Board wide latitude in fulfilling its obligation to review agency disciplinary actions." *U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 6-7 (2001). "It is not for the Federal Circuit to substitute its own judgment for that of the Board." *Id.* at 7.

To take an adverse action against an employee, an agency must (1) "establish by preponderant evidence that the charged conduct occurred," (2) "show a nexus between that conduct and the efficiency of the service," and (3) "demonstrate that the penalty imposed was reasonable in light of the relevant factors set forth in *Douglas v. Veterans Admin.*, 5 MSPB 313, 5 M.S.P.R. 280, 307-08 (1981)." *Malloy v. U.S. Postal Serv.*, 578 F.3d 1351, 1356 (Fed. Cir. 2009). Also, there is no requirement that an arbitrator explicitly mention these adverse action elements in his decision. *See O'Neill v. Dep't of Hous. and Urban Dev.*, 220 F.3d 1354, 1364 (Fed. Cir. 2000) (finding of nexus between charged conduct and efficiency of service need not be explicit); *Girani v. Fed. Aviation Admin.*, 924 F.2d

237, 242 n.10 (Fed. Cir. 1991) ("an arbitrator has no duty to make a specific finding that a removal under § 7513(a) is for the 'efficiency of the service'"). For the reasons provided below, we hold that the arbitrator's analysis satisfies all three adverse action elements.

Regarding the first adverse action element, the record shows that Ms. Exum, on five separate occasions, refused to follow her supervisors' instructions to complete interviews. As the arbitrator explained, "[i]t is not a question of whether Ms. Exum actually completed scheduled interviews. It is clear that she did not." As a result, Ms. Exum "directly disobey[ed] orders of her supervisors." Thus, the arbitrator's finding that the charged conduct occurred is supported by substantial evidence, which means the first adverse action element is met.

Regarding the second adverse action element, a sufficient nexus exists between an employee's conduct and the efficiency of the service when the conduct occurred in part at work. *See Parker v. U.S. Postal Serv.*, 819 F.2d 1113, 1116 (Fed. Cir. 1987). Here, the record shows that the incidents underlying Specifications 1-5 occurred while Ms. Exum was working. Additionally, the failure to follow instructions affects an agency's ability to carry out its mission and is clearly connected to the efficiency of the service. *Blevins v. Dep't of the Army*, 26 M.S.P.R. 101, 104 (1985), *aff'd*, 790 F.2d 95 (Fed. Cir. 1986). Therefore, the arbitrator's finding that Ms. Exum ignored her supervisors' instructions also demonstrates a sufficient nexus. Thus, the second adverse action element is met.

Next, we address the third adverse action element: the reasonableness of the Agency's decision to remove Ms. Exum from her position as an ISO. Ms. Exum argues that the Agency incorrectly relied on three past discipli-

nary actions (besides Specifications 1-5) in removing her. Specifically, Ms. Exum argues that the Agency failed to appropriately analyze these three prior disciplinary actions under the required *Bolling* standard. *See Bolling v. Dep't of the Air Force*, 8 M.S.P.B. 658 (1981). Ms. Exum also points out that one of these three prior actions, a fourteen-day suspension, was overturned on appeal after the Agency made its decision but before the arbitrator made his.

While the deciding official at the Agency did mention the three prior disciplinary actions in considering the *Douglas* factors and the propriety of the removal penalty, the arbitrator properly focused his analysis on Specifications 1-5: "[t]he underlying problem of persistent insubordination, on its own, has been clearly established."[1] Because the arbitrator was entitled to "wide latitude in fulfilling [his] obligation to review agency disciplinary actions," *Gregory*, 534 U.S. at 6-7, we do not consider his actions to be arbitrary, unsupported by substantial evidence, or not in accordance with law. *See Quinton v. Dep't of Transp.*, 808 F.2d 826, 829 (Fed. Cir. 1986) (Affirming the removal penalty where the Merit Systems Protection

---

[1] We interpret this statement to mean that the insubordination conduct listed in Specifications 1-5 is clearly established and is sufficient on its own to support removal. This interpretation is appropriate, in our view, because the statement (1) is contained in the arbitrator's "Discussion" section, which focuses entirely on the incidents contained in Specifications 1-5; (2) is immediately preceded by the arbitrator's conclusion that the reversal of the fourteen-day suspension was insufficient to negate the termination decision; and (3) references "insubordination," which is how the deciding official characterizes the behavior listed in Specifications 1-5. The interpretation that we adopt was proposed by the Government in its brief, and Ms. Exum did not object in her reply.

Board ("MSPB") relied on only two of the seven charges considered by the deciding official because those two charges "provide[d] a sufficient basis for upholding the removal" and because "the MSPB considered the *Douglas* factors in relation to the two sustained charges.").

Ms. Exum argues that her conduct does not warrant the extreme penalty of removal, and that this penalty is unreasonably harsh under *Douglas*. We disagree. In analyzing the incidents covered by Specifications 1-5, the arbitrator, while not organizing his analysis explicitly by *Douglas* factors, clearly considered and applied the relevant factors. In particular, the arbitrator explained that after Ms. Exum's first three failures to follow instructions (*see* Specifications 1-3), she still violated her supervisors' orders two more times (*see* Specifications 4-5). The record also shows that Ms. Exum failed to attend any of the counseling sessions provided during the improvement period. According to the arbitrator, the Agency's willingness try the improvement period "demonstrated an attempt to salvage an otherwise useful ISO" and shows that "[m]anagement did not resort to the ultimate penalty in the first instance."

Additionally, the arbitrator saw no purpose for progressive discipline or additional training, explaining that "Ms. Exum showed no willingness to conform to Agency expectations." Indeed, even the Union acknowledged that Ms. Exum was "stubborn and inflexible." This analysis invokes at least the following *Douglas* factors: "the clarity of notice to the employee of the rule violated," "the potential for the employee's rehabilitation," and "the adequacy and effectiveness of alternative sanctions to deter such conduct in the future." The arbitrator also discussed in his opinion the "the nature and seriousness" of Ms.

Exum's offense, as well as her "job level and type of employment," two more *Douglas* factors.

Accordingly, we conclude that the arbitrator reasonably found from his *Douglas* factor analysis that Ms. Exum's "persistent insubordination" warranted termination. Indeed, this finding was based solely on the conduct outlined in Specifications 1-5. For these reasons, the third adverse action element is met.[2]

The fact that not all of the *Douglas* factors were substantively covered in the arbitrator's decision does not warrant reversal. Indeed, the *Douglas* factors need not "be applied mechanically," nor must every irrelevant factor be considered in every case, or explicitly stated to be irrelevant. *Nagel v. Dep't of Health & Human Servs.*, 707 F.2d 1384, 1386 (Fed. Cir. 1983); *see also Farrell v. Dep't of the Interior,* 314 F.3d 584, 594 (Fed. Cir. 2002) (This court does not require an arbitrator to consider each and every one of the twelve *Douglas* factors "mechanistically by [a] preordained formula.") (internal quotation marks omitted); *Kumferman v. Dep't of the Navy,* 785 F.2d 286, 291 (Fed. Cir. 1986) ("It is not reversible error if

---

[2] Worth noting, even if the incidents covered by Specifications 1-5 are considered "first-time offenses," removal is within the permissible range of penalties under the penalty table utilized by the Agency.

We also note that the deciding official performed a thorough *Douglas* analysis. While this official relied on the three prior disciplinary actions in considering some of the factors, she analyzed others without any consideration of this prior conduct (e.g., "the nature and seriousness of the offense," "the employee's job level and type of employment," "the effect of the offense on the employee's ability to perform satisfactorily," and "mitigating circumstances surrounding the offense").

the Board fails expressly to discuss all of the *Douglas* factors.").

In sum, all three adverse action elements are met. Therefore, the arbitrator's decision to uphold the Agency's removal penalty was supported by substantial evidence, was not arbitrary and capricious, and was in accordance with the law.

Additionally, Ms. Exum argues (1) that she did not follow her supervisors' instructions because she felt doing so would require her to violate the law, and (2) that she had the discretion within her position to act independently, regardless of the instructions. These arguments have no merit. First, the two types of actions ordered by the supervisors (i.e., interviewing the applicants and issuing an RFE) were authorized by federal regulations. *See* 8 C.F.R. § 245.6; 8 C.F.R. § 103.2(b)(8)(ii), (iii). Moreover, an inter-office memorandum generated by the Agency states that while federal regulations "clearly require[] applicants and petitioners to file complete applications," the option to deny these applications will be "exercise[d] . . . judiciously." Under these laws and policies, all of which Ms. Exum would have been privy to, it is clear that the instructions she received from her supervisors would not require her to break the law.

Second, regarding Ms. Exum's discretion argument, the arbitrator relied on two memoranda (the Yates and Neufeld memos) to conclude that the Agency's policy required Ms. Exum to obey her supervisor. Moreover, our law states that "Government employees . . . may not refuse to do work merely because of disagreements with management . . . [and failure] to perform their duties . . . [is done] at the risk of being insubordinate." *Dep't of*

*Health & Human Servs.*, 707 F.2d 1384, 1387 (Fed. Cir. 1983). Therefore, we reject Ms. Exum's argument.

We have considered Ms. Exum's remaining arguments and reject those, as well.

## III

For these reasons, the arbitrator's decision is affirmed.

## COSTS

Each party shall bear its own costs.

## **AFFIRMED**