NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**LONDER B. DAVIS,**
*Petitioner,*

v.

**UNITED STATES POSTAL SERVICE,**
*Respondent.*

---

2012-3069

---

Petition for review of the Merit Systems Protection Board in case no. DA0752100459-B-1.

---

Decided: June 12, 2012

---

LONDER B. DAVIS, of Dallas, Texas, pro se.

RYAN M. MAJERUS, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With him on the brief were STUART F. DELERY, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and CLAUDE BURKE, Assistant Director.

---

Before LINN, MOORE, and O'MALLEY, *Circuit Judges*.

PER CURIAM.

Londer B. Davis ("Davis") appeals from the final decision of the Merit Systems Protection Board ("the Board") which: (1) denied his petition for review of the administrative judge's ("AJ") initial decision on grounds that he failed to show any new, previously unavailable, evidence; and (2) adopted the AJ's initial decision affirming the United States Postal Service's ("USPS" or "the agency") decision to remove him from employment for unacceptable conduct. *Davis v. U.S. Postal Serv.*, No. DA-0752-10-0459-B-1, 2011 MSPB LEXIS 6950 (M.S.P.B. Nov. 21, 2011) (reported in table format at 117 M.S.P.R. 107) ("*Final Decision*"); *Davis v. U.S. Postal Serv.*, No. DA-0752-10-0459-B-1, 2011 MSPB LEXIS 2867 (M.S.P.B. May 9, 2011) ("*Initial Decision*"). For the reasons explained below, we *affirm*.

## BACKGROUND

Davis began working for the Postal Service on June 12, 1993. Prior to his removal, Davis was a full-time letter carrier assigned to the Robert E. Price Station in Dallas, Texas. On September 26, 2009, Davis was involved in an altercation with another carrier, Tat Lee. The altercation took place in a conference room at the station and occurred in the presence of two witnesses: Hilario Montoya, the Acting Supervisor for the station, and Biagio Randazzo, the Chief Union Steward for that shift. Montoya and Randazzo later testified that they were in the conference room to investigate an earlier argument that Davis and Lee had on the workroom floor. It is undisputed that Davis used profanity during that verbal altercation.

While in the conference room, Davis and Lee continued to exchange profanity, and Lee slammed his fist into the conference room table. At that point, Davis left his end of the table, walked toward the end of the table where Lee was standing, and punched Lee in the head. Although testimony from Montoya and Randazzo and a written statement from Lee confirmed this sequence of events, Davis denied hitting Lee.

In a letter dated September 30, 2009, Montoya notified Davis that he was being placed on "non-duty status, non-pay, effective September 26, 2009." Appendix ("A.") 83. The letter informed Davis that his conduct during the altercation was unacceptable, and that an investigation was underway to determine whether corrective action was warranted.

On October 23, 2009, Montoya sent Davis a Notice of Proposed Removal for unacceptable conduct stemming from the September 26, 2009 incident. By letter dated November 9, 2009, George Young, the Postal Service's deciding official for this case, informed Davis that he would be removed from employment effective November 29, 2009. In the letter, Young: (1) explained that he considered the factors listed in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 306-07 (1981) ("the *Douglas* factors") to assess whether the penalty of removal is appropriate; and (2) walked through each of the twelve *Douglas* factors as they applied to Davis.

Davis appealed his removal to the Board, and the AJ conducted an evidentiary hearing on August 12, 2010. During the hearing, the AJ heard testimony from several individuals, including Montoya, Randazzo, Davis, and Young. On August 13, 2010, the AJ issued an initial decision dismissing Davis' removal appeal as untimely filed. *Davis v. U.S. Postal Serv.*, No. DA-0752-10-0459-I-

1, 2010 MSPB LEXIS 4783 (M.S.P.B. Aug. 13, 2010). Davis petitioned the Board for review and, in a decision dated January 7, 2011, the Board granted the petition and reversed, finding that the regional office had improperly rejected Davis' filing as premature, thereby contributing to his untimeliness. *Davis v. U.S. Postal Serv.*, 116 M.S.P.R. 329, 2011 MSPB LEXIS 223 (M.S.P.B. Jan. 7, 2011). The Board remanded the case to the AJ to render an initial decision on the merits of Davis' claims.

On February 3, 2011, the AJ conducted a conference call with the parties, explaining that he "already conducted a hearing on the matter and received evidence regarding the agency's charge." *Initial Decision*, 2011 MSPB LEXIS 2867, at *1-2. The AJ informed the parties that the record would close on February 14, 2011, but that they could submit additional evidence and argument before that date. Neither party submitted any additional evidence.

On May 9, 2011, the AJ issued an initial decision affirming the agency's penalty of removal. First, the AJ concluded that the USPS "presented preponderant evidence to support the charge of unacceptable conduct." *Initial Decision*, 2011 MSPB LEXIS 2867, at *2. Based on the evidence, the AJ found it undisputed that Davis was involved in a verbal altercation with Lee and used profanity on the workroom floor. Indeed, Davis admitted to doing so at the evidentiary hearing. The AJ noted a conflict in the evidence with respect to whether Davis struck Lee during the altercation in the conference room. Although testimony from Montoya and Randazzo was consistent with Lee's written statement that Davis punched him in the head, Davis denied doing so. The AJ did not find Davis' denial credible, noting that "Randazzo, as a union steward appeared reluctant to present testimony that could be considered adverse to another (or

former) union official, but he nevertheless confirmed that he witnessed [Davis'] unprovoked attack on Lee." *Id.* at *7. The AJ further found it inherently unlikely that Montoya, Randazzo, and Lee "would fabricate such a surprising event" and that there was "no suggestion of any collusion or conspiracy." *Id.* at *7-8. Accordingly, the AJ concluded that the agency showed, by a preponderance of the evidence, that Davis struck Lee.

As to the penalty, the AJ found that removal "is reasonable and promotes the efficiency of the service." *Id.* at *8. Specifically, the AJ found that Young – the deciding official in this case – weighed the relevant factors articulated in *Douglas* and that, in light of those factors, removal was appropriate. Young testified that the Postal Service has a "Zero Tolerance" policy for workplace violence and that the agency gives periodic talks on the issue. *Id.* at *10. Because Davis struck a co-worker "while on duty and in the presence of his supervisor and union steward, [the AJ] found the misconduct unequivocally duty related." *Id.* at *11. Looking to the evidence as a whole, the AJ concluded that Davis' removal did not exceed the bounds of reasonableness and that it would "advance the efficiency of the service." *Id.* at *12.

Davis filed a petition for review, requesting that the Board reconsider the AJ's initial decision. Davis subsequently submitted several documents for the first time, including: (1) a 1994 arbitrator's decision and award; (2) a 1995 arbitrator's award summary; and (3) a 2009 arbitrator's award summary.

On November 21, 2011, the Board issued a final decision denying Davis' petition for review. In its decision, the Board noted that Davis failed to explain how the newly-submitted arbitration awards "are of sufficient weight to warrant a different outcome from the remand

initial decision." *Final Decision*, 2011 MSPB LEXIS 6950, at *3. And, because Davis failed to show that the documents were previously unavailable before the record closed, the Board concluded that it need not consider them. *Id.* (citing *Avansino v. U.S. Postal Serv.*, 3 M.S.P.R. 211, 214 (1980)). The Board found that Davis failed to either: (1) present new or previously unavailable evidence; or (2) show that the AJ made an error interpreting the law or regulation. Accordingly, the Board denied Davis' petition for review, and the AJ's initial decision became the final decision of the Board, "[e]xcept as modified by th[e] [Board's] Final Order." *Id.*

Davis timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## DISCUSSION

To sustain an adverse action against an employee, an agency such as the USPS must: (1) prove, by a preponderance of the evidence, that the charged misconduct occurred; (2) establish a nexus between that misconduct and the efficiency of the service; and (3) demonstrate that the penalty imposed is reasonable. *Malloy v. U.S. Postal Serv.*, 578 F.3d 1351, 1356 (Fed. Cir. 2009). The Board gives plenary review to the agency's decision as to each of the three factors. Our review of final Board decisions is limited, however. By statute, we must affirm the Board's decision unless it is: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c).

On appeal, Davis argues that the Board erred in affirming the USPS's decision removing him from employment because it failed to consider certain facts and applied the wrong law. With respect to the facts, Davis

argues that the Board failed to consider evidence he submitted after the AJ rendered the initial decision. With respect to the law, Davis appears to argue that: (1) the Board failed to consider his status as a preference eligible veteran; and (2) the penalty of removal was unreasonable. For the reasons explained below, each of these arguments is without merit.

## A.   Untimely Evidentiary Submissions

First, Davis claims that Board erred by failing to consider the three arbitration awards he submitted. According to Davis, if the AJ and the Board "had taken these documents into consideration the outcome maybe would have been different." In response, the agency argues that the Board "properly ruled that it need not consider the three arbitration decisions" because they: (1) were untimely introduced; and (2) "involved unrelated arbitration proceedings for other parties." Respondent's Informal Br. 11. Because we agree with the agency on the first point, we need not address the second.

Pursuant to the Board's rules, "[o]nce the record closes, no additional evidence or argument will be accepted unless the party submitting it shows that the evidence was not readily available before the record closed." 5 C.F.R. § 1201.114(i). The rules further provide that the Board has discretion to grant a petition for review where "[n]ew and material evidence is available that, despite due diligence, was not available when the record closed." 5 C.F.R. § 1201.115(d)(2). Consistent with these principles, both this court and the Board have held that "a party submitting new evidence in connection with a petition for review must satisfy the burden of showing that the evidence is material and that it could not have been obtained earlier with the exercise of due diligence."

*Brenneman v. Office of Pers. Mgmt.*, 439 F.3d 1325, 1328 (Fed. Cir. 2006) (citations omitted).

Here, the Board found that Davis failed to explain the relevance of the arbitration decisions and further failed to show that they were previously unavailable "despite his due diligence." *Final Decision*, 2011 MSPB LEXIS 6950, at *3. Based on the record, we find no error in the Board's decision. As previously noted, the AJ gave the parties until February 14, 2011 to submit any additional post-hearing evidence. The AJ issued his initial decision on May 9, 2011, and Davis did not submit the arbitration awards until May 23, 2011 – over three months after the record closed for evidence. Davis failed to provide any explanation for this delay. And, because all three of the arbitration awards pre-date February 14, 2011 – the date the record closed for evidence – Davis cannot argue that his newly-submitted evidence "was not readily available before the record closed." *See* 5 C.F.R. § 1201.114(i). Indeed, two of the three arbitration decisions were rendered in the mid-1990s, and the third was from 2009. Davis does not allege that he could not have obtained these documents earlier with the exercise of due diligence. Given these circumstances, and absent any explanation for the delay, we are unable to say that the Board abused its discretion by refusing to consider documents that were not part of the record before the AJ.

## B. Veterans' Preference

Davis also contends that the Board failed to consider his status as a preference-eligible veteran. To the extent Davis seeks to assert a claim under the Veterans Employment Opportunities Act of 1998 ("VEOA"), that claim fails. Pursuant to 5 U.S.C. § 3330a, a preference-eligible veteran who alleges that an agency violated his rights under a statute or regulation relating to veterans' prefer-

ence must first file a complaint with the Secretary of Labor before appealing the alleged violation to the Board. *See* 5 U.S.C. § 3330a(d)(1); *see also* 5 C.F.R. § 1208.2(b) ("[A] preference eligible . . . may file an appeal with the Board, provided that he has satisfied the statutory requirements for first filing a complaint with the Secretary of Labor and allowing the Secretary at least 60 days to attempt to resolve the complaint."). Accordingly, to establish Board jurisdiction over an appeal brought under the VEOA, an appellant must show, among other things, that he exhausted his administrative remedies with the Department of Labor. *Lazaro v. Dep't of Veterans Affairs*, 666 F.3d 1316, 1319 (Fed. Cir. 2012).

The record contains no evidence that Davis filed a VEOA complaint with the Department of Labor. Nor does Davis allege that he filed such a complaint. Indeed, on his handwritten MSPB Appeal Form dated May 25, 2010, Davis indicated that he was not asserting any other claims, including a veterans' preference claim, in connection with his appeal. A. 112. Davis' preference-eligible status was not raised as an issue before the Board, and he does not explain how the agency violated his rights under the VEOA. Given these factors, we conclude that Davis' attempt to raise a VEOA claim for the first time on appeal is improper.

## C. The Penalty

Finally, Davis argues that the AJ failed to consider certain mitigating factors in determining the appropriate penalty. Specifically, Davis claims that the AJ should have considered: (1) his twenty-one years of service with the agency and lack of prior disciplinary action; (2) provocation; (3) "that the incident occurred off the workroom floor"; and (4) whether "other individuals" received a lesser penalty.

As a general rule, the penalty for employee misconduct is left to the agency's discretion. *Villela v. Dep't of Air Force*, 727 F.2d 1574, 1576 (Fed. Cir. 1984) ("The choice of penalty is generally left to agency discretion."). Neither the Board nor this court has authority to determine what penalty the agency should have selected. Instead, the Board must assess whether the agency balanced the relevant *Douglas* factors and selected a penalty that is within the "bounds of reasonableness." *Hayes v. Dep't of Navy*, 727 F.2d 1535, 1540 (Fed. Cir. 1984) (quotations omitted). This court will "normally defer to the administrative judgment unless the penalty exceeds the range of permissible punishments specified by statute or regulation, or unless the penalty is so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion." *Villela*, 727 F.2d at 1576 (internal quotations and citation omitted).

In sustaining the penalty of removal, the AJ noted that the deciding official considered the relevant *Douglas* factors, including: (1) the nature and seriousness of the offense; (2) the notoriety of the incident; (3) whether there were any mitigating circumstances; (4) the potential for rehabilitation; (5) the adequacy of alternative sanctions to deter future misconduct; and (6) the fact that Davis was on notice of the Postal Service's Zero Tolerance Policy for workplace violence. The AJ found that removal was justified, particularly since Davis' misconduct "occurred at work, while on duty, in the presence of his supervisor, and chief union steward." *Initial Decision*, 2011 MSPB LEXIS 2867, at *12. Because Davis "disrupted the workplace, and was verbally and physically abusive and threatening toward a co-worker," the AJ found that his removal "does not exceed the bounds of reasonableness." *Id.*

On appeal, Davis seems to argue that the agency and the Board failed to consider his lack of prior disciplinary

history during his twenty-one years with the Postal Service. As this court has consistently noted, "[i]t is not reversible error if the Board fails expressly to discuss all of the *Douglas* factors. The Board need only determine that the agency considered the factors significant to the particular case." *Kumferman v. Dep't of Navy*, 785 F.2d 286, 291 (Fed. Cir. 1986) (internal citation omitted). Here, review of the deciding official's removal decision reveals that he considered Davis' past work record and disciplinary history in making his penalty determination. Indeed, in his decision letter, the deciding official discussed all twelve of the *Douglas* factors and found that they weighed in favor of removal. Although the AJ's initial decision does not reference Davis' length of service and lack of prior disciplinary action, the AJ expressly found that the deciding official considered mitigating circumstances. Accordingly, we find that the Board and the agency considered and balanced all relevant *Douglas* factors – including mitigating factors – in assessing the appropriate penalty.

With respect to provocation, the AJ expressly rejected Davis' testimony and credited testimony from Montoya, Randazzo, and Lee. Specifically, the AJ credited Randazzo's testimony that Davis engaged in an "unprovoked attack on Lee." *Initial Decision*, 2011 MSPB LEXIS 2867, at *7. It is well-established that credibility determinations are within the AJ's discretion and are "virtually unreviewable" on appeal. *Frey v. Dep't of Labor*, 359 F.3d 1355, 1361 (Fed. Cir. 2004) (quoting *King v. HHS*, 133 F.3d 1450, 1453 (Fed. Cir. 1998)); *see also Griessenauer v. Dep't of Energy*, 754 F.2d 361, 364 (Fed. Cir. 1985) ("The determination of the credibility of the witnesses is within the discretion of the presiding official who heard their testimony and saw their demeanor."). Davis has given no

reason for us to reject the AJ's credibility determinations, and we decline to do so.

Davis next argues that the Board should have considered "that the incident occurred off the workroom floor." Davis fails to explain how this fact is relevant to the penalty determination. The altercation occurred at the workplace, while Davis was on duty, and the AJ found that it was disruptive. As the AJ noted, moreover, the deciding official "considered the notoriety of the offense as a significant factor" and conducted a meeting with staff following the incident to discuss what had happened. *Initial Decision*, 2011 MSPB LEXIS 2867, at *10. Given these circumstances, the fact that the physical altercation took place in the station conference room, rather than on the workroom floor, does not render the Board's decision unreasonable.

Although Davis claims that "other individuals" received a lesser penalty, it is unclear which individuals he is referring to, and there is no evidence that Davis asserted a claim for disparate treatment before the AJ. To the extent Davis is referring to the grievants involved in the three unrelated arbitration decisions previously discussed, those decisions were not properly before the Board, and we decline to consider them for the first time on appeal.

Because the agency considered and balanced all of the relevant *Douglas* factors, the AJ did not err in finding that the penalty of removal was reasonable. Given the totality of the circumstances, we cannot say that the Board abused its discretion in sustaining Davis' removal for unacceptable conduct.

CONCLUSION

For the foregoing reasons, and because we find that Davis' remaining arguments are without merit, we affirm the Board's final decision.

**AFFIRMED**

COSTS

No costs.